1

2

3

4

5

6 **UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7

8

9  DONALD SCHUSTER,                    )      3:11-cv-00081-HDM (WGC)
                                       )
10            Plaintiff,               )      **REPORT AND RECOMMENDATION**
                                       )      **OF U.S. MAGISTRATE JUDGE**
11       vs.                           )
                                       )
12  ROBERT BANNISTER, *et al*.,        )
                                       )
13                                     )
              Defendants.              )
14  _____     )

15       This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior

16  United States District Judge. This action was referred to the undersigned Magistrate Judge pursuant to

17  28 U.S.C. section 636(b)(1)(B) and Rule IB 1-4 of the Local Rules of Practice.

18       Currently before the court are two (2) motions:

19       1.      Defendants' (specified below) Motion for Summary Judgment (Doc. # 51). Plaintiff

20               Donald Schuster opposed (Doc. # 54) and Defendants replied (Doc. # 55); and

21       2.      Schuster's Motion for a Temporary Restraining Order and/or Preliminary Injunction

22               (Doc. # 58). Defendants opposed (Doc. # 61) and Schuster has not filed a Reply brief.

23       After a thorough review, the court recommends Defendants' Motion for Summary Judgment

24  should be granted and Schuster's Motion for a Temporary Restraining Order and/or Preliminary

25  Injunction should be denied.

26                                        **I. BACKGROUND**

27       Plaintiff Donald Schuster, a *pro se* litigant in the custody of the Nevada Department of

28  Corrections ("NDOC"), brings this action pursuant to 42 U.S.C. section 1983. (Pl.'s Am. Compl. (Doc.

1 | # 36) at 1.) Although Schuster was transferred between different facilities several times, the events

2 | giving rise to this litigation occurred while Schuster was housed at Northern Nevada Correctional Center

3 | ("NNCC") in Carson City, Nevada (*id.* at 16) and Lovelock Correctional Center ("LCC") in Pershing

4 | County, Nevada (*id.* at 12-18), where he presently resides (Doc. # 65). Defendants are the following

5 | NDOC employees: Robert Bannister, Medical Director; Katherine Hegge, Correctional Nurse III; Dr.

6 | John R. Scott, physician; Don Poag, Director of Nursing Services I; Brian Egerton, Correctional

7 | Nurse II; Debra Williams, Correctional Nurse II; and Rebecca Richardson, Correctional Nurse II

8 | (collectively "Defendants," unless referred to individually or otherwise noted). (Doc. # 36 at 1-3.)

9 | Schuster challenges the course of medical treatment he received for a leg injury. (*See id.*) On

10 | screening, the court determined Schuster stated a colorable Eighth Amendment claim against

11 | Defendants. (Doc. # 6 at 6.) In Count I, he claims Defendants' delay in securing the necessary treatment

12 | for his fractured leg and their failure to provide him with pain medication violated the Nevada

13 | Constitution and Nevada's medical negligence statute. In Count II, Schuster alleges Defendants' conduct

14 | just described also amounted to deliberate indifference to a serious medical need under the Eighth

15 | Amendment. (*Id.* at 5-18; Doc. # 6 (Screening Ord.) at 4.)

16 | Defendants now move for summary judgment and make the following arguments in support of

17 | their motion: (a) Schuster's medical negligence claim must be dismissed because Schuster failed to

18 | attach a medical affidavit; (b) Dr. Bannister and Nurse Hegge were not personally involved in the alleged

19 | violations; (c) Dr. Scott's liability is based on a difference of medical opinion and Schuster has not

20 | otherwise demonstrated that Scott acted with deliberate indifference; (d) Schuster has not demonstrated

21 | that Defendant Poag acted with deliberate indifference; (e) Nurse Egerton and Nurse Williams's liability

22 | is based on a difference of medical opinion and Schuster has not otherwise demonstrated that these

23 | defendants acted with deliberate indifference; (f) Schuster has not demonstrated that Nurse Richardson

24 | acted with deliberate indifference; and (g) Defendants are entitled to qualified immunity. (Doc. # 51

25 | at 21-30.) In making these arguments, Defendants considerably rely upon the declaration of NDOC

26 | Health Information Director Karen L. Scofield and Ms. Scofield's interpretation of Schuster's medical

27 | records referenced therein (Doc. # 56).

28 |

## II. STANDARD OF REVIEW

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Liberty Lobby*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Liberty Lobby*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In determining summary judgment, a court applies a burden shifting analysis. When the nonmoving party bears the burden of proving the claim or defense at trial, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at

trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal quotations and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations omitted).

## III. DISCUSSION

The court will begin with a summary of Schuster's allegations.[1] Then, the court will analyze, in turn, Defendants' Motion for Summary Judgment (Doc. # 51) and Schuster's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. # 58). In performing these analyses the court will consult, when necessary, the exhibits submitted by the parties, including declarations and Schuster's

---

[1] Schuster filed an Amended Complaint (Doc. # 36) after he filed his initial Complaint (Doc. # 7). Because it is "well-established doctrine that an amended pleading supersedes the original pleading," *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990)), the court will draw the relevant allegations from Schuster's Amended Complaint.

4

1  relevant medical records, his grievances and his deposition transcript.

2  **A. Summary of Schuster's Allegations**

3        In Count I, Schuster alleges Defendants violated his right to "reasonable and prudent medical

4  care . . . as provided by the Nevada State Constitution and in accord with NRS chapters 41." (Doc. # 36

5  at 5.) In Count II, Schuster alleges Defendants violated his Eighth Amendment rights. (*Id.* at 12.) Both

6  counts contain the same allegations, which the court describes as follows.

7        On September 3, 2008, Schuster slipped while standing on his desk and fell, injuring his right

8  leg. (*Id.*) Officers at LCC carried him to the medical unit where Defendant Williams briefly examined

9  him and gave him a leg wrap and crutches, but told him he would have to wait until the next day to see

10  a doctor. (*Id.*) The next day, Defendant Scott ordered an x-ray and told Schuster it showed a "burst

11  tendon and signs of a fracture." (*Id.* at 13) (Internal quotations omitted.) Schuster then requested hospital

12  treatment but Dr. Scott denied the request, telling him the injury would "heal on its own." (*Id.*) (Internal

13  quotations omitted.)

14        Over the next several days, Schuster suffered "enormous" pain, swelling and discoloration in his

15  leg. (*Id.* at 13-15.) During this time, he alleges he submitted various "kites" requesting relief for his

16  continuing pain, and filed grievances seeking further medical attention,[2] both to no avail. (*Id.* at 13, 14-

17  15, 17.) He also claims Defendants Poag, Richardson, Scott and Hegge all either denied him treatment

18  directly, or denied his grievances. (*Id.* at 13-15.) On one occasion, Schuster alleges Poag, who was

19  working the "pill call" window, denied him treatment because he was "too late" and told him to return

20  the following day, but when Schuster returned as instructed, Poag (along with Richardson) again denied

21  Schuster's request for medical attention and told him to speak with Dr. Scott, whom he said was

22  unavailable. (*Id.* at 14-15.)

23        On September 12, 2008, Schuster filed an Emergency Grievance. (*Id.* at 15.) Immediately

24  thereafter, an officer escorted him to the medical department where Defendant Egerton examined him.

25  (*Id.*) According to Schuster, his injury at this time was "swelling, appearing doubled in size, and severely

26

27       [2] Schuster filed Informal Grievance # 20062775868 on September 10, 2010 (Doc. # 54 at 25), a First Level
Grievance on September 18, 2008 (id. at 30-35), and a Second Level Grievance on October 29, 2008 (Doc. # 54 at 38-46).

28                                                              5

1  discolored . . . ." (*Id.*) Egerton refused to provide further medical treatment and told Schuster the

2  swelling and pain would go away on their own. (*Id.*)

3       On September 22, 2008, Schuster was transferred to NNCC. (*Id.* at 16.) Dr. Richard Long, an

4  NNCC physician, examined Schuster, ordered that he be taken to an outside clinic for imaging and

5  scans, and prescribed him medication for pain relief. (*Id.*) On October 2, 2008, twenty-nine days after

6  his fall at LCC, Schuster underwent surgery at Sierra Surgery Hospital in Carson City, Nevada. (*Id.*) Dr.

7  Long performed the surgery, which included partial removal of Schuster's tibia and replacement with

8  a cadaver tibia, insertion of a screw, several pins and a steel bracket. (*Id.*) Dr. Long explained to Schuster

9  that the surgery was "complicated by the delay of treatment" because the bone had begun to heal

10 improperly in an incorrect position. (*Id.*) (Internal quotations omitted.) Later, on October 29, 2009, Dr.

11 Long explained to Schuster he would "never fully recover" and that he would need a knee replacement

12 within ten (10) years. (*Id.*) (Internal quotations omitted.)

13      Finally, Schuster alleges Defendant Bannister denied his grievances.

14      As a consequence, Schuster contends Defendants "acted with deliberate indifference" in failing

15 to provide him with "reasonable, prudent, and necessary medical care . . . ." (*Id.* at 17.)[3]

16 **B. Defendants' Motion for Summary Judgment**

17      *1. Count I: Medical Malpractice/Negligence*

18      Defendants argue "Count I cannot proceed as a medical negligence claim . . . because Schuster

19

20      [3] Schuster makes numerous additional allegations in his Opposition brief that were not contained in his Amended
   Complaint, including an allegation that Defendants failed to follow certain Administrative Regulations (Doc. # 54 at 9). And
21 Defendants meticulously respond to some of these allegations in their Reply brief. Although the court must liberally construe
   the pleadings of a *pro se* inmate-plaintiff, *see Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988),
22 this does not entail consideration of new arguments or allegations raised outside of the operative pleading, which here, is
   Schuster's Amended Complaint (Doc. # 36). *See Lee v. NNAMHS*, 3:06-cv-433-LRH-RAM, 2009 WL 3052443, at *3 n.5
23 ("It is not appropriate for Plaintiff to assert new allegations outside the scope of the complaint in an opposition to a motion
   for summary judgment.") In addition, Defendants in their Reply brief repeatedly reference Schuster's deposition transcript.
24 In most cases, Defendants do so to demonstrate the absence of some genuine issue of material fact. In other cases, however,
   Defendants refer to Schuster's deposition transcript seemingly to argue that Schuster's failure to mention or elaborate upon
25 some critical allegation is proof of that allegation's weakness or impropriety. (*See*, *e.g.*, Doc. # 55 at 3) (implying Schuster's
   failure to remark upon Dr. Scott's alleged suggestion that Schuster replace his crutches for a cane raises questions about that
26 allegation's propriety). In this case, Schuster's failure in his deposition to remark upon some allegation in his Amended
   Complaint does *not* persuade this court one way or another about the allegation's propriety. In issuing a recommendation to
27 the district judge, this court will focus on nothing other than the allegations *in Schuster's Amended Complaint* and the
   *relevant* (and properly authenticated) documentary and testimonial evidence submitted by the parties.

28                                        6

1   failed to file a medical affidavit in support of the complaint filed in this case, as required by NRS

2   41A.071." (Doc. # 51 at 21.) Further, Defendants assert Count I should be dismissed *without* leave to

3   amend because that is what Nevada case law requires. (*Id*. at 22-23.)

4          Conversely, Schuster retorts that he does not believe "the highest Court of Nevada intended to

5   discourage meritorious legal claims, just frivolous ones. . . . Plaintiff is a prisoner [without] . . . the

6   power, or ability, to obtain such an official affidavit from a qualified physician." (Doc. # 54 at 9.)

7   Accordingly, Schuster requests that the court "grant Plaintiff an injunction in order to obtain any

8   affidavits necessary to proceed concurrently with Plaintiff's Nevada State Tort claim."[4] (*Id*.) He makes

9   this request "in order to preserve the Plaintiff's due process rights . . . ." (*Id*.)

10         In their Reply brief, Defendants state Schuster could have secured the required affidavit before

11  filing this action and that Nevada law does not permit an amendment after the complaint's filing to

12  rectify the affidavit's absence. (Doc. # 55 at 15-16.)

13         Nevada Revised Statute ("NRS") section 41A.071 states a plaintiff must submit with the

14  complaint an affidavit from a medical expert practicing in the relevant area in order to support his

15  allegations. *See* NEV. REV. STAT. § 41A.071. The statute further states the court "*shall* dismiss the

16  action, without prejudice . . . ." for a plaintiff's failure to provide the affidavit. *Id*. (Emphasis added.).

17         However, in *Borger v. Eighth Judicial Dist. Court*, the Nevada Supreme Court, albeit in *dicta*,

18  concluded "NRS 41A.071 clearly mandates dismissal, *without leave to amend*, for complete failure to

19  attach an affidavit to the complaint. This interpretation is consistent with the underlying purpose of the

20  measure, which is to ensure that such actions be brought in good faith based upon competent expert

21  opinion." 120 Nev. 1021, 1029, 102 P.3d 600, 606 (2004) (emphasis added); *accord Collins v.*

22  *MacArthur*, No. 3:05-cv-237-PMP-VPC, 2006 WL 1966728, at *2 (D. Nev. 2006); *cf. Washoe Med.*

23  *Ctr. v. Second Judicial Dist. Court of State of Nevada ex rel. County of Washoe*, 122 Nev. 1298,

24  1303-04, 148 P.2d 790, 793-94 (2006) (holding "a medical malpractice complaint filed without a

25  supporting medical expert affidavit is void ab initio . . ." and, as a consequence, "it does not legally exist

26  _____

27         [4] The court interprets Schuster's use of the word "injunction" as a "stay." *See* BLACK'S LAW DICTIONARY 1425 (7th
    Ed. 1999) (defining "stay" as "[t]he postponement or halting of a proceeding, judgment, or the like.")

28                                                         7

1   and thus it cannot be amended [under Rule 15(a) of the Nevada Rules of Civil Procedure]"); *Fierle v.*

2   *Perez*, 219 P.3d 906, 914 (Nev. 2009) (concluding "medical malpractice and professional negligence

3   claims made in a complaint that become void ab initio for lack of the attachment of an expert affidavit

4   may not be cured by the amendment of that complaint . . . ."). The *Borger* court reached this conclusion

5   after a brief separation of powers analysis, which the court explained as the judiciary's "inherent power

6   to govern its own procedures." *Borger*, 120 Nev. at 1029, 102 P.3d at 606 (internal quotations and

7   citation omitted).

8          Here, after perusing the record, the court finds no evidence that Schuster submitted a medical

9   expert's affidavit in support of his Amended Complaint. Even when the court liberally construes the

10   allegations in his Amended Complaint, as the court must, *see Karim-Panahi*, *supra*,[5] the court finds

11   Schuster does not contest Defendants' allegation that he failed to submit an affidavit. Instead, Schuster

12   seeks a stay of proceedings (what he calls an "injunction") in order to secure and submit the missing

13   affidavit. It is clear under the Nevada case authority set forth above, however, that a stay for such

14   purposes is inappropriate. Because Schuster failed to supply a medical expert's affidavit with his

15   complaint, his medical malpractice/negligence claim is *void ab initio* and it cannot be cured by

16   subsequently attaching the missing affidavit by amendment. Accordingly, the court recommends

17   Defendants' Motion for Summary Judgment (Doc. # 51) should be granted on Count I.

18          ***2. Count II: Personal Participation (Defendants Bannister and Hegge)***

19          Defendants cite to Schuster's deposition transcript and contend "Schuster readily admitted that,

20   aside from Dr. Bannister's involvement responding to Schuster's grievance, Dr. Bannister had no other

21   involvement in the claims of Schuster's case." (Doc. # 51 at 23) (Emphasis deleted.) With regard to

22   Defendant Hegge, Defendants similarly contend "there is no specific allegation or evidence of her

23   alleged involvement amounting to culpable conduct asserted by Schuster, other than the allegation that

24

25          [5] In his Opposition brief, Schuster implores the court to do exactly this, *i.e.*, liberally construe his pleadings, and

26   notes his placement in administrative segregation makes it "extremely time consuming to have 'legal case law' retrieved for
     him and very difficult to research the law in general." (Doc. # 54 at 2, 8.) Schuster's point is well taken, but this court already

27   has an obligation under *Karim-Panahi* to liberally construe a *pro se* inmate's pleadings. If Schuster seeks to challenge the
     alleged limitations of the NDOC's law library system, he may do so in a separate civil rights complaint.

28                                                          8

1    she denied a grievance." (*Id.* at 24.) Defendants assert a mere grievance denial is insufficient to generate

2    liability under section 1983 because it does not constitute "actionable, personal involvement . . . ." (*Id.*)

3           Other than repeating his allegations that Bannister and Hegge denied his grievances (Doc. # 54

4    at 6, 7), it appears Schuster does not challenge Defendants' contentions that Bannister and Hegge's did

5    not personally participate in the alleged constitutional deprivation.

6           "Liability under section 1983 arises only upon a showing of personal participation by the

7    defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). "A prison official's

8    denial of an inmate's grievance or appeal from a misconduct finding generally does not constitute

9    significant participation in an alleged constitutional violation sufficient to give rise to personal liability."

10   *Riley v. Dunn*, No. CV 09-8850-JFW (MLG), 2011 WL 4940855, at *7 (C.D. Cal. 2011) (citing, *inter*

11   *alia*, *Wilson v. Woodford*, No. 1:05-cv-00560-OWW-SMS (PC), 2009 WL 839921, at *6 (E.D.

12   Cal. 2009). "Only persons who cause or participate in the violations are responsible. [Citations omitted.]

13   Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.

14   A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard

15   who rejects an administrative complaint about a completed act of misconduct does not." *George v.*

16   *Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (citing *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th

17   Cir. 2005)); *cf. Brown v. Schrum*, No. C08–5326RBL/JKA, 2009 WL 779407, at *4 (W.D. Wash. 2009)

18   ("Plaintiff is not entitled to the [grievance] answer of his choice.").

19          In this case, it appears Schuster names Bannister and Hegge as defendants entirely because of

20   the part they played in denying his grievances. (*See*, *e.g.*, Doc. # 51-1 (Pl.'s Dep. Tr.) at 15-18.) To the

21   extent that Schuster raises an Eighth Amendment claim against these defendants based solely upon their

22   participation in his grievance process, such allegations fail to state a federal civil rights claim under the

23   case authority cited above. Accordingly, the court recommends Defendants' Motion for Summary

24   Judgment (Doc. # 51) should be granted as it pertains to Defendants Bannister and Hegge.

25          ***3. Deliberate Indifference to a Serious Medical Need***

26          In the recent case of *Akhtar v. Mesa*, --- F.3d ---, 2012 WL 5383038 (9th Cir. Nov. 5, 2012), the

27   Ninth Circuit reiterated the two-pronged test for evaluating a claim for deliberate indifference to a

28                                                          9

serious medical need. Quoting *Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006), the court explained:

> First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong . . . is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.

2012 WL 5383038 at *9 (citation omitted).

Deliberate indifference entails something more than medical malpractice (negligence) or even gross negligence. *Toguchi v. Chung*, 391 F.3d 1051, 1059-60 (9th Cir. 2004). Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *rev'd on other grounds by WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) Instead, deliberate indifference is present only when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *accord Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002); *see also Lolli v. County of Orange*, 351 F.3d 410, 420-21 (9th Cir. 2003) ("Much like recklessness in criminal law, deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm.") (citations omitted).

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment . . . ." *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060; *accord Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam) (delay in treatment must lead to further injury to support a claim of deliberate indifference).

In addition, a prison physician is not deliberately indifferent to an inmate's serious medical need when the physician prescribes a different method of treatment than that requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining negligence in diagnosing or treating a medical condition,

10

1    without more, does not violate a prisoner's Eighth Amendment rights). A difference of opinion

2    concerning appropriate medical care–either between a physician and the prisoner, or between medical

3    professionals–does not amount to deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 987 (9th

4    Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *see Franklin v. Oregon*, 662 F.2d

5    1337, 1344 (9th Cir. 1981) (difference of opinion between a prisoner-patient and medical staff regarding

6    treatment is not cognizable under section 1983). For a difference of opinion to amount to deliberate

7    indifference, the inmate "must show that the course of treatment the doctors chose was medically

8    unacceptable under the circumstances" and that the course of treatment was chosen "in conscious

9    disregard of an excessive risk to [the prisoner's] health." *Snow*, 681 F.3d at 988 (internal quotations and

10   citation omitted); *accord Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

11         "The requirement of deliberate indifference is less stringent in cases involving a prisoner's

12   medical needs than in other cases involving harm to incarcerated individuals because '[t]he State's

13   responsibility to provide inmates with medical care ordinarily does not conflict with competing

14   administrative concerns.'" *McGuckin*, 974 F.2d at 1060 (quoting *Hudson v. McMillan*, 503 U.S. 1, 6

15   (1992)). "In deciding whether there has been deliberate indifference to an inmate's serious medical

16   needs, [the court] need not defer to the judgment of prison doctors or administrators." *Hunt*, 865 F.2d

17   at 200.

18         In this case, the remaining defendants (Dr. Scott, Don Poag, Brian Egerton, Debra Williams and

19   Rebecca Richardson (collectively "Defendants" unless referred to individually or otherwise noted))[6]

20   assume for the sake of argument that Schuster suffered a leg injury from falling from his desk on

21   September 3, 2008. (Doc. # 55 at 2.) And Defendants do not contest whether Schuster's leg injury was

22   "serious" for Eighth Amendment purposes. The court's summary judgment analysis, therefore, turns on

23   whether each individual defendant's response to Schuster's serious medical need was deliberately

24   indifferent. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) ("The prisoner must set forth specific

25

26         [6] These defendants are the only remaining defendants because this court has recommended that Schuster's claims
     against Defendants Bannister and Hegge should be dismissed. (*See* Section III.B.2, *supra*, at p. 8-9.) The court notes that even
27   if a finding were made that the dismissal of Bannister and Hegge on "personal participation" grounds is erroneous, a dismissal
     against these defendants pursuant to the rationale set forth in this section would be appropriate.

28                                                        11

1  facts as to each individual defendant's deliberate indifference.")

2      As noted above, Schuster's allegations challenge his delay in receiving surgery and the allegedly

3  inadequate treatment he received between his fall and the surgery. The court will address each of these

4  allegations as they relate to the relevant defendants. In the addressing these allegations, the court will

5  incorporate the relevant medical records, as well as other documentary and testimonial evidence

6  submitted by the parties that bear on the material facts of this case.

7      <u>a. Nurse Williams</u>

8      Schuster's allegations against Nurse Williams are not lengthy. The extent of his allegations are

9  that shortly after his fall, Williams examined him and issued him a leg wrap and crutches, but she

10 "refused" his request for immediate hospital attention and told him he had to wait until the following

11 day to see a doctor. (Doc. # 36 at 12.) In their motion, Defendants argue Nurse Williams's refusal of

12 Schuster's request to see a doctor on September 3, 2008,[7] and her decision to schedule an appointment

13 with Dr. Scott the following day while, in the interim, providing him with a leg wrap, crutches and pain

14 medication, was a mere difference of medical opinion, which "does not state an Eighth Amendment

15 claim." (Doc. # 51 at 28.) In his Opposition Brief, Schuster baldly asserts Williams's report from her

16 September 3, 2008 examination "appears inaccurate and even altered . . ." but he provides no evidentiary

17 support for this assertion. (Doc. # 54 at 3.)

18     Schuster's medical records (and his deposition testimony), provided by Defendants, largely

19 confirm Schuster's factual allegations. His medical records show that shortly after his fall on

20 September 3, 2008, Schuster was seen by Nurse Williams, who examined his right knee and noted no

21 deformity, no swelling, no breaks in skin, and no bruising. (Doc. # 56-1 at 1; *accord* Doc. # 51-1

22 at 44-45.) She provided Schuster with a leg wrap, crutches and pain medication (ibuprofen), and

23 scheduled a follow-up with Dr. Scott for the next day. (Doc. # 56-1 at 1.)

24     Even though Schuster's general factual allegations against Nurse Williams regarding the care she

25 provided him are supported by the record, Schuster nevertheless fails to state an Eighth Amendment

26

27     [7] Although Defendants cite the relevant date as "September 11, 2008," (Doc. # 51 at 27), the court will presume this was a clerical mistake and that Defendants meant to state "September 3, 2008." (*See*, *e.g.,* Docs. # 51-1 at 38:5, # 36 at 17.)

28

1  claim. In other words, even assuming Nurse Williams did what Schuster alleges, her conduct did not

2  amount to deliberate indifference. Nurse Williams neither denied, delayed nor failed to respond to

3  Schuster's medical need. She scheduled an appointment for *the following day* with a physician

4  (Dr. Scott) and, in the meantime, she provided Schuster with a leg wrap, crutches and pain medication.

5  Moreover, in response to Schuster's medical kite received on September 9, 2008, Nurse Williams

6  responded by scheduling another appointment with a physician for September 15, 2008. (Doc. # 56-2

7  at 3.) Such conduct cannot reasonably be described as a conscious disregard of an excessive risk to

8  Schuster's health. *See Farmer*, 511 U.S. at 837.

9      Further, even if this treatment was inadequate as Schuster has alleged (*see*, *e.g.*, Doc. # 51-1

10  at 46-47), it amounted to a difference of medical opinion regarding the appropriate course of treatment,

11  which does not rise to the level of deliberate indifference. *Franklin*, 662 F.2d at 1344. Schuster falls well

12  short of demonstrating that Nurse Williams's treatment was "medically unacceptable" in light of the

13  circumstances. *See Jackson*, 90 F.3d at 332. As a consequence, Defendants have met their burden of

14  demonstrating Schuster's failure to make a showing sufficient to establish that Nurse Williams acted

15  with deliberate indifference. *See Celotex*, 477 U.S. at 323-25.

16      The burden now shifts to Schuster to establish the existence of a genuine factual dispute

17  regarding whether Nurse Williams's conduct amounted to deliberate indifference. *See Matsushita*, 475

18  U.S. at 586. Schuster has failed to meet his burden. Although the record supports Schuster's factual

19  allegations, it does not support his legal conclusions. Accordingly, the court recommends Defendants'

20  Motion for Summary Judgment (Doc. # 51) should be granted as it pertains to Nurse Williams.

21      b. Nurse Richardson

22      The court applies a similar analysis to Nurse Richardson as the court just applied to Nurse

23  Williams. The only difference between the two is rather than the record supporting ultimately

24  insufficient allegations as it did regarding Nurse Williams, here, the record simply lacks *any* competent

25  evidence supporting Schuster's allegations against Nurse Richardson.

26      Schuster alleges Nurse Richardson, one of the medical officers on duty at the "pill call" window

27  on September 11, 2008,  "refused [Schuster] treatment of any kind" and instead referred him to see

28                                                            13

1 Dr. Scott. (Doc. # 36 at 15.) Schuster testifies similarly in his deposition.[8] There, he testifies Nurse

2 Richardson "refused to see me . . . [and] that I had to see Dr. Scott." (Doc. # 51-1 at 23-24.) Defendants

3 argue Nurse Richardson's alleged conduct constituted a mere difference of medical opinion and that

4 Schuster, as an inmate, is not entitled to every medical visit he seeks. (Doc. # 51 at 28-29.)

5       Neither Defendants nor Schuster provide any documentary evidence of Schuster's alleged

6 encounter with Nurse Richardson at the pill call window on September 11, 2008. And, the testimonial

7 evidence from Schuster's deposition merely parrots the allegations in Schuster's Amended Complaint.

8 The court construes this lack of evidence about the alleged September 11, 2008 encounter against

9 Defendants because, as the moving party, Defendants bear the initial burden of showing the absence of

10 a genuine issue of material fact.

11       However, even after construing the lack of evidence against Defendants and drawing all

12 reasonable inferences in Schuster's favor, the court finds Schuster's alleged encounter with Nurse

13 Richardson is not material to this case. *See Liberty Lobby*, 477 U.S. at 248. Regardless of whether Nurse

14 Richardson refused to treat Schuster on September 11, 2008, the medical records show Schuster seen

15 by NDOC medical staff the following day, September 12, 2008. At this visit, nursing staff examined his

16 condition and, pursuant to a telephonically-issued prescription from Dr. Scott, provided an Ace wrap,

17 pain medication, and patient teaching on the need to keep his right foot elevated to reduce the mild

18 swelling and bruising. (Doc. # 56 at 5; Doc. # 56-1 at 2; Doc. # 56-4 at 1.) Even if Nurse Richardson did

19 what Schuster alleges, no reasonable jury could find that her refusal to treat him constituted a conscious

20 disregard to an excessive risk to his health, *see Farmer*, 511 U.S. at 837, or that her refusal was

21 "medically unacceptable" in light of the circumstances, *see Jackson*, 90 F.3d at 332.

22       Because Schuster fails to set forth specific facts demonstrating a genuine issue of material fact

23 regarding Nurse Richardson's conduct, the court recommends Defendants' Motion for Summary

24 Judgment (Doc. # 51) should be granted as it pertains to Nurse Richardson.

25

26     [8] Schuster's deposition occurred before he amended his Complaint to properly name various Doe Defendants,
including Nurse Richardson. (*Compare* Doc. # 51-1 *with* Doc. # 36.) It is clear, however, that the allegations in Schuster's

27 Amended Complaint pertaining to his encounter with Nurse Richardson are referring to the same encounter he testifies about
on pages 23-24 of his deposition transcript. (*Compare* Doc. # 36 at 15 *with* Doc. # 51-1 at 23-24.)

28               14

1

      c. Director Poag

2         Schuster alleges Director Poag denied him treatment at the pill call window on September 10,

3  2008, and after telling him to come back the following day, Poag again denied him treatment when he

4  returned as instructed, and told him to see Dr. Scott. (Doc. # 36 at 13-15.) As with Nurse Richardson,

5  the court finds Schuster's allegations, even if true and supported by the record, fail to state an Eighth

6  Amendment claim. As explained above, Schuster was seen by NDOC medical staff on

7  September 12, 2008, where he was examined and treated. He was also later seen by Dr. Scott–for a

8  second time since his injury–on September 15, 2008. (Doc. # 56 at 6; Doc. # 56-4 at 1.) No reasonable

9  jury could find that Poag's alleged refusal to treat Schuster constituted deliberate indifference. *See*

10  *Farmer*, 511 U.S. at 837; *Jackson*, 90 F.3d at 332. Accordingly, Defendants' Motion for Summary

11  Judgment (Doc. # 51) should be granted as it pertains to Director Poag.

12

      d. Nurse Egerton

13         Schuster alleges Egerton examined him on September 12, 2008, and "[d]espite observing the

14  serious nature of Plaintiff's injury [Egerton] refused necessary medical treatment and told Plaintiff that

15  the 'swelling and pain would go away on its own.'" (Doc. # 36 at 15.) He testifies similarly in his

16  deposition. (Doc. # 51-1 at 93-96.) As noted above, the record shows Schuster received medical

17  treatment on September 12, 2008, by NDOC nursing staff, presumably including Egerton. (Doc. # 56

18  at 5; Doc. # 56-1 at 2; Doc. # 56-4 at 1.) To the extent that this treatment was not Schuster's preferred

19  course of treatment (hospitalization), the court finds it amounted to a difference of medical opinion,

20  which does not rise to the level of deliberate indifference. *Franklin*, 662 F.2d at 1344. Accordingly, the

21  court recommends Defendants Motion for Summary Judgment (Doc. # 51) should be granted as it

22  pertains to Nurse Egerton.

23

      e. Dr. Scott

24         Schuster alleges Dr. Scott examined him on September 4, 2008–one day after Schuster's fall–

25  and ordered an x-ray of Schuster's leg, which showed a "burst tendon and signs of a fracture." (Doc. # 36

26  at 6.) Schuster alleges Dr. Scott refused his request for hospitalization, telling him his injury "would heal

27  on its own" and that he "wasn't tough enough." *Id*. Schuster testifies similarly in his deposition. (Doc.

28

1   # 51-1 at 62-65, 70-76.)

2       The record demonstrates that on September 4, 2008, Dr. Scott examined Schuster, noted a

3   possible meniscus tear (ultimately diagnosed as a tibia plateau fracture), ordered an x-ray, prescribed a

4   knee brace for ninety (90) days and admitted Schuster to the infirmary (Doc. # 56 at 4; Doc. # 56-4 at 1);

5   that in a Physician's Order dated September 5, 2008, Dr. Scott issued a lower bunk medical restriction

6   for Schuster for thirty (30) days (Doc. # 56 at 5; Doc. # 56-4 at 1); that on September 12, 2008, Dr. Scott

7   telephonically issued a prescription for pain medication and an Ace wrap (Doc. # 56 at 5; Doc. # 56-4

8   at 1); and that on September 15, 2008, Dr. Scott examined Schuster again and prescribed a knee brace,

9   more pain medication and continued use of crutches, and he also requested approval from the Utilization

10  Review Committee to have Schuster transferred to NNCC for an orthopedic consultation (Doc. # 56 at

11  6; Doc. # 56-4 at 1; Doc. # 56-6 at 1).

12      Clearly, the record reflects that Dr. Scott responded to Schuster's complaints, ordered and

13  reviewed his x-ray, rendered an ultimate diagnosis of a tibia plateau fracture, ordered Schuster to sleep

14  on a lower bunk, prescribed pain Ibuprofen pain medication and renewed that prescription, and

15  prescribed an Ace leg wrap. Schuster does not set forth any specific facts showing that this treatment was

16  deficient, much less that it amounted to deliberate indifference. *See Leer*, 844 F.2d at 634. The court

17  finds Dr. Scott's course of treatment does not reflect any indifference to Schuster's health, and

18  Schuster's conclusory allegations to the contrary are insufficient to defeat Defendants' motion as it

19  pertains to Dr. Scott. Accordingly, the court recommends Defendants' Motion for Summary Judgment

20  (Doc. # 51) should be granted as it pertains to Dr. Scott.

21      In sum, for the reasons stated above, the court recommends Defendants' Motion for Summary

22  Judgment (Doc. # 51) should be granted in its entirety. As a consequence, Defendants' argument

23  regarding qualified immunity is moot.

24  **B. Schuster's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. # 58)**

25      In this motion, Schuster's requests appear to overlap somewhat. But as the court reads his motion

26  and supporting documentation, Schuster appears to seek two forms of injunctive relief: (1) access to an

27  outside, "qualified" physician in order to receive "necessary medical care," and (2) "meaningful access

28                                      16

1  to the courts." (Doc. # 58-1 (Pl.'s Decl.) at 1.)

2  As to his first request to see an outside doctor, Schuster seeks this relief to secure "a medically

3  appropriate course of action . . . designed to restore and maintain the full function of his right

4  leg/knee . . . ." (Doc. # 58 at 2.) Schuster claims that since his surgery, he had not received adequate pain

5  relief, a walking cane, or rehabilitative therapy. (Doc. # 58-1 at 2.) He claims to be suffering irreparable

6  harm from continued physical pain and stiffness as well as "an increasing risk that [his] leg/knee will

7  never be restored to its full usefulness." (Doc. 58-1 at 5.)

8  Conversely, Defendants contend the urgency behind Schuster's request for injunctive relief is

9  not credible. Doc. 61 at 7. Supported by the declaration of Scherrie Clinkscales, NDOC's Health

10 Information Director (Doc. # 63), Defendants note that Schuster has not filed a single medical kite since

11 October 23, 2008, in which he requested medical assistance for his knee or leg. (Doc. # 61 at 6.) In

12 addition, Defendants point out that Schuster has already alleged that his leg would never fully recover

13 (*see* Doc. # 36 at 9), so injunctive relief fashioned in an effort to do so is unnecessary. (*Id.* at 7.)

14 As to Schuster's second request for meaningful access to the courts, he seeks: (a) a physician's

15 affidavit (seemingly to support his negligence claim against Defendants alleged in Count I of his

16 Amended Complaint), and (b) transfer away from High Desert State Prison ("HDSP") in Las Vegas,

17 Nevada back to LCC where "[he] could be provided meaningful access to the courts without interference

18 or obstruction of NDOC employees . . . ." (Doc. # 58 at 2; *see* Doc. # 58-1 at 6-9.)

19 In response, Defendants contend these allegations are not properly before the court because

20 Schuster did not present them in his Amended Complaint. (Doc. # 61 at 7.) Defendants further contend

21 that Schuster's request for a medical affidavit is "futile" because Nevada law requires the plaintiff in a

22 medical negligence suit to supply the affidavit "at the very outset," unless the case will be dismissed with

23 prejudice. (Doc. # 61 at 2 n.2.)

24 ***1. Legal Standard***

25 To obtain preliminary injunctive relief in the Ninth Circuit, a party must meet one of two tests.

26 Under the "traditional" test, preliminary relief may be granted if the court finds: (1) the moving party

27 will suffer irreparable injury if the preliminary relief is not granted; (2) the moving party has a likelihood

28  17

1    of success on the merits; (3) the balance of potential harm favors the moving party; and (4) the

2    advancement of the public interest favors granting injunctive relief. *Burlington N. R.R. v. Dep't of*

3    *Revenue*, 934 F.2d 1064, 1084 (9th Cir. 1991).

4         Under the "alternative" test, the moving party may meet the burden by showing either: (1)

5    probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are

6    raised and the balance of hardships tips sharply in the moving party's favor. *Id.*; *Associated Gen.*

7    *Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991), *cert. denied*,

8    503 U.S. 985 (1992). As this case law demonstrates, each test requires a showing that the moving party

9    has a likelihood of success on the merits.

10        ***2. Analysis***

11        a. Schuster's Request to See an Outside Physician

12        As shown above, this court has recommended that summary judgment should be granted in favor

13   of Defendants. As a direct consequence of that recommendation, the court finds Schuster can show no

14   likelihood of success on the merits of the instant request for injunctive relief. Thus, the court

15   recommends this part of his motion (Doc. # 58) should be denied.

16        b. Meaningful Access to the Courts

17        This portion of Schuster's motion should be denied for several reasons. First, like his request to

18   see an outside physician discussed above, Schuster can show no likelihood of success on the merits

19   because this court has recommended Defendants' Motion for Summary Judgment should be granted.

20        Second, Schuster's request for an after-the-fact medical affidavit for the purposes of pursuing

21   his medical negligence claim is not permitted under Nevada law. *See Fierle*, 219 P.3d at 914 (holding

22   a medical negligence claim is *void ab initio* if a medical affidavit is not attached when the claim is filed,

23   and this defect cannot be cured subsequently by amendment). Furthermore, this court has already

24   recommended denial of Schuster's medical negligence claim on summary judgment due to his failure

25   to attach the affidavit; thus, Schuster's request for injunctive relief in this form is moot.

26        Third, Schuster's request for access to the courts is completely unrelated to his underlying civil

27   rights claim, which involves a claim of deliberate indifference to a serious medical under the Eighth

28
                                                         18

1   Amendment. Although the Ninth Circuit has not addressed the issue directly, other circuits have

2   repeatedly held that a plaintiff seeking injunctive relief must show "[a] relationship between the injury

3   claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d

4   470, 471 (8th Cir. 1994); *accord Little v. Jones*, 607 F.3d 1245, 1250-51 (10th Cir. 2010); *Colvin v.*

5   *Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010); *Omega World Travel, Inc. v. Trans World Airlines*, 111

6   F.3d 14, 16 (4th Cir. 1997). As this case law explains, injunctive relief is used to address issues related

7   to the underlying violations presented in the complaint.

8          Consequently, here, Schuster is not permitted to file a complaint in federal court and then use

9   that action as a forum to air his unrelated grievances. Such grievances are properly lodged using the

10  prison grievance system and, if they remain unresolved, by filing a new action.

11         Finally, to the extent that Schuster's request for access to courts challenges the conditions of his

12  confinement at HDSP, this part of his motion is moot. He has been transferred from HDSP back to LCC

13  (*see* Doc. # 65), as he requests in his motion, and he presents no evidence that he might be transferred

14  back to HDSP or that he can reasonably expect that the alleged impediments to the courts will be

15  repeated. *See Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975) (where the prisoner is challenging

16  conditions of confinement and is seeking injunctive relief, transfer to another prison renders the request

17  for injunctive relief moot absent some evidence of an expectation of being transferred back); *Johnson v.*

18  *Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to

19  [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no

20  reasonable expectation of returning to [the prison] . . . .").

21         In sum, therefore, the court recommends Schuster's Motion for a Temporary Restraining Order

22  and/or Preliminary Injunction (Doc. # 58) should be denied.

23                                        **IV. RECOMMENDATION**

24         **IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING**

25  Defendants' Motion for Summary Judgment (Doc. # 51) and **DENYING** Schuster's Motion for a

26  Temporary Restraining Order and/or Preliminary Injunction (Doc. # 58).

27         The parties should be aware of the following:

28                                                    19

1.      They may file, pursuant to 28 U.S.C. section 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Judge.

2.      This Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Judge's Order.

DATED: December 7, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

20